Nicholas F. Pompelio, Esq./Attorney ID #015712008
Paul R. Rizzo, Esq./Attorney ID #020011980
Lisa M. Fittipaldi, Esq./Attorney ID #004811985
**DiFrancesco, Bateman, Kunzman,**
  **Davis, Lehrer & Flaum, P.C.**
Attorneys-at-Law
15 Mountain Boulevard
Warren, NJ 07059
(908) 757-7800
*Attorneys for Plaintiff*
(Our File No.: P11161)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## (NEWARK VICINAGE)

|  |  |
|---|---|
| SHAQUANA D. DUNCAN as GENERAL ADMINISTRATOR and ADMINISTRATOR *AD PROSEQUENDUM* OF THE ESTATE OF JAMEEK LOWERY, Deceased<br><br>                              Plaintiff,<br><br>        vs.<br><br>CITY OF PATERSON, NEW JERSEY a municipal corporation of the State of New Jersey; OFFICER MICHAEL AVILA; OFFICER MUCIO LUCERO; OFFICER KYLE WANAMAKER; in their official and individual capacities; ST. JOSEPH'S UNIVERSITY MEDICAL CENTER; DR. JOSEPH AFFORTUNATO; Fictitious Designation, John Does (#1-25); Fictitious Designation, ABC Corps. (#1-25).<br><br>                              Defendants. | CIVIL ACTION NO.:<br>2:20-cv-08471-MCA-LDW<br><br><br><br><br><br>**<u>FIRST AMENDED COMPLAINT<br>AND JURY TRIAL  DEMAND</u>** |

Plaintiff, Shaquana D. Duncan, General Administrator and Administrator *Ad Prosequendum* of the Estate of Jameek Lowery, Deceased, residing in the City of Paterson, County of Passaic, State of New Jersey, by way of First Amended Complaint against all Defendants, states as follows:

{A1093132.1 }                                          1

**PRELIMINARY STATEMENT**

This civil action is filed in order to vindicate the rights of Jameek Lowery (hereinafter referred to as "Decedent") to engage in activity protected by the Fourth and Fourteenth Amendments to the Constitution of the United States of America without fear of reprisal and to seek economic redress for losses suffered by Decedent and his dependents at law at the hands of all Defendants.

**JURISDICTION**

1.      This Court has jurisdiction over the dispute between the parties pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) and (4) because Plaintiff's civil causes of action arise under the Constitution and laws of the United States, specifically 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

2.      Plaintiff hereby invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear related state causes of action.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because this Court sits in the district where all of defendants reside and is also the district where the substantial part of the events or omissions in connection with Plaintiff's claims arose.

**PARTIES**

4.      Prior to his death, Decedent resided in the City of Paterson, County of Passaic, State of New Jersey.

5.      Plaintiff, Shaquana D. Duncan, is the biological mother to the minor child, A.L., with Decedent being the biological father.  Plaintiff, Shaquana D. Duncan, is the duly appointed General Administrator and Administrator *Ad Prosequendum* of Decedent's Estate.

6.      Defendant, City of Paterson, is upon information and belief, a duly designated municipality of the State of New Jersey and organized under the laws of the State of New

Jersey, located in the County of Passaic and operates, manages and controls the City of Paterson Police Department under its governmental authority.

7.      Defendants, Officer Michael Avila, (hereinafter "Officer Avila"), Officer Mucio Lucero, (hereinafter "Officer Lucero") and Officer Kyle Wanamaker (hereinafter "Officer Wanamaker") were at all relevant times duly appointed and active police officers of the City of Paterson Police Department and were acting in such capacities as the agents, servants, and/or employees of Defendant, City of Paterson and were acting under color of law.  Said defendants are being named herein in their official and individual capacities.   At times referenced herein Defendants, Officer Avila, Officer Lucero and Officer Wanamaker shall be referred to collectively as "Defendants".

8.      At all relevant times referenced herein, Defendant, Saint Joseph's University Medical Center (hereinafter "St. Joseph's Hospital") is a legal entity organized under the laws of the State of New Jersey that owns and operates the for-profit hospital located at 703 Main Street, Paterson, New Jersey.

9.      At all relevant times referenced herein, Defendant, Dr. Joseph Affortunato, (hereinafter "Dr. Affortunato") was a physician and medical doctor licensed to practice under the laws of the State of New Jersey and practicing under the authority of and out of Defendant, St. Joseph's Hospital as its agent, representative, servant and/or employee. Upon information and belief, Dr. Affortunato specializes in the field of emergency medicine.

10.     At all relevant times, John Does 1-25, names of said individuals presently unknown and fictitious, were: police sergeants, police chiefs, supervisors, agents, employees, servants or otherwise acting on behalf of and within the scope of their employment with the City of Paterson and/or the Paterson Police Department and acting under color of law; and/or were individuals or entities whose identities are currently unknown to Plaintiff and who participated in the rendering of medical care and treatment to

Decedent while he presented at Defendant, St. Joseph's Hospital and were negligent in the care and treatment provided.

11.    ABC Corps. 1-25 are fictitious designations for one or more private or public entities and organizations whose identities are currently unknown.

**FACTS COMMON TO ALL COUNTS**

12.    On or about January 5, 2019, Decedent sought medical attention after experiencing physical and emotional distress following his ingestion of recreational drugs.

13.    At approximately 2:45am, Decedent called 911 from his residence and requested an ambulance because he was feeling paranoid.  Thereafter, members of the Paterson Fire Department EMT squad arrived at his residence with an ambulance to transport him to the local hospital emergency room at Defendant, St. Joseph's Hospital located in Paterson, New Jersey.

14.    At approximately 3:00am, Decedent arrived at the emergency room department at Defendant, St. Joseph's Hospital.  He was accompanied by a female friend. He was admitted to the emergency room and evaluated by medical staff and nurses, specifically including but not limited to, Defendant, Dr. Affortunato.

15.    While at the hospital, Decedent advised staff and Defendant, Dr. Affortunato that he ingested recreational drugs and was feeling paranoid.

16.    Decedent exhibited visible signs of paranoia and strange behavior while at the hospital and in the emergency room.

17.    Defendant, Dr. Affortunato made the decision to discharge Decedent from the emergency room within approximately one-half (1/2) hour after his arrival and personally escorted Decedent out of the emergency room.

18.    After being escorted from the emergency room, Decedent continued exhibiting heightened signs of visible paranoia and strange behavior while waiting in the

hospital lobby. He proceeded to jump on furniture and make further commotions. Decedent refused to leave the hospital and engaged in a physical struggle with several hospital security staff when told he had to leave because he was discharged. Defendant, Dr. Affortunato was informed of Decedent's continued behavior but refused to see him again and did not change his decision to discharge Decedent from the hospital.

19.     Hospital security staff had to forcibly escort Decedent out of the lobby against his will and into a waiting taxi cab.

20.     At approximately 3:30am, Decedent and a friend left the parking lot of the hospital in a taxicab.

21.     Shortly after leaving the hospital parking lot, Decedent exited the taxicab on foot in the middle of the street and proceeded to walk toward the Paterson Police Department.

22.     At approximately 3:45am, Decedent entered the lobby of the Paterson Police Department and walked inside. He approached the front desk and told the officer on duty that he was afraid because he thought that people were trying to kill him. He appeared paranoid, in visible distress and was sweating.

23.     Police dispatch requested an ambulance to take Decedent to the hospital for evaluation and two (2) members of the Paterson Fire Department working as EMTs subsequently arrived at the police station with an ambulance to transport him.

24.     At this time, Defendants, Officer Avila, Officer Wanamaker and Officer Lucero arrived at the police station and encountered Decedent while he was in the lobby.

25.     Defendants, Officer Avila and Officer Wanamaker grabbed Decedent from under his arms and dragged him from the police lobby to the ambulance.

26.     Defendants, Officer Avila, Officer Wanamaker, and Officer Lucero forcibly restrained Decedent inside the ambulance and onto a stretcher.

27.     Decedent was afraid and stated that he thought the police officers were going to kill him.  He exhibited clear signs of paranoia, erratic behavior and emotional distress while engaging with Defendants.  He tried to get out of the ambulance.  However, the officers would not allow him to leave.

28.     Defendants, Officer Avila, Officer Wanamaker and Officer Lucero continued to forcibly restrain Decedent inside the ambulance.  They handcuffed both of his arms to the stretcher and strapped his waist and legs down.  The officers forcibly restrained Decedent's head and got on top of him holding down his waist with their own bodies.  While doing so, Defendants used their hands to punch and strike Decedent about his body and face and choked him around his neck.

29.     Defendants ultimately secured Decedent to the stretcher inside the ambulance with his head closest to the rear of the ambulance doors and his feet toward the front.

30.      After securing Decedent inside the ambulance, Defendants, Officer Avila and Officer Wanamaker rode with the Decedent during the ride back to St. Joseph's Hospital.  One (1) Paterson EMT accompanied them in the back of the ambulance.  Defendant, Officer Lucero followed the ambulance in his patrol car to the hospital.

31.     While inside the ambulance, Officer Avila straddled Decedent's waist and legs forcibly pinning and restraining him to the stretcher as Officer Wanamaker stood over his head holding his head and shoulders down.  The EMT placed a mask on him.  One of the officers pulled Decedent's hood to his sweatshirt over his face.

32.     During the transport to the hospital, Decedent's airway was restricted and he was suffering traumatic injuries from being assaulted.  Prior to arriving at the hospital, Decedent's body went limp, he lost consciousness and stopped breathing.

33.     Upon arrival at the hospital, Defendants, Officer Avila and Officer Wanamaker

notified hospital staff to respond to the ambulance where a nurse discovered that Decedent did not have a pulse.

34.     Decedent was removed from the ambulance and taken into the emergency room where CPR was performed.  Medical staff were able to revive Decedent and regain his pulse.  However, he remained in critical condition suffering from brain damage and resulting kidney and organ failure.

35.     Decedent succumbed to his injuries and passed away at the hospital on January 7, 2019.

## FIRST COUNT

### Claim For Violation Of Rights Against Being Subjected to Excessive Force
### As Protected By The Fourth and Fourteenth Amendment Of The U.S. Constitution
### Brought Pursuant to 42 U.S.C. §1983

36.     Plaintiff repeats and realleges the previous allegations in this First Amended Complaint as if set forth at length herein.

37.     At all relevant times, Defendants, Officer Avila, Officer Lucero and Officer Wanamaker were acting under color of law, as an agent, servant, and employee of Defendant, City of Paterson and the Paterson Police Department, in connection with the incident described herein involving Decedent.

38.     The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while encountering and being arrested and/or stopped by the police.

39.     The aforementioned acts and conduct of Defendants, Officer Avila, Officer Lucero and Officer Wanamaker were unnecessary, unjustified and completely unreasonable under the circumstances.  At all relevant times, Decedent was unarmed and posed no danger to the safety and welfare of Officer Avila, Officer Lucero and Officer Wanamaker and all those around him.

40.     All of the aforementioned acts or omissions of Defendants, Officer Avila, Officer Lucero and Officer Wanamaker constitute excessive force within the meaning of the law.

41.     All of the aforementioned acts or omissions of Defendants, Officer Avila, Officer Lucero and Officer Wanamaker were unreasonable under the circumstances, not justified according to law and deprived Decedent of his federally protected constitutional right to be free from excessive force at the hands of the police.

42.     As a direct and proximate result of the aforementioned violations of Decedent's civil and constitutional rights actionable under 42 U.S.C. § 1983, he was caused to suffer serious bodily injuries resulting in his death and has sustained other losses and damages.

WHEREFORE, Plaintiff, Shaquana D. Duncan, General Administrator and Administrator *Ad Prosequendum* of the Estate of Jameek Lowery, Deceased demands judgment against Defendants, Officer Avila, Officer Lucero, Officer Wanamaker, John Does 1-25 and ABC Corps. 1- 25, jointly and severally, for compensatory damages, punitive damages, attorney's fees, interest, cost of suit, and such other and further relief as the Court deems equitable and just.

## SECOND COUNT

### Municipal Liability Against Defendant, City of Paterson
### For Violation of 42 U.S.C. §1983

43.     Plaintiff repeats and realleges the previous allegations in this First Amended Complaint as if set forth at length herein.

44.     Defendants, City of Paterson, including its agents, the Paterson Police Department and John Does 1-25 and ABC Corps. 1-25, were responsible for making government policy and for oversight of the functions and duties of their departments, divisions, bureaus and agencies engaged in providing general welfare services, including

police protection.

45.     Defendant, City of Paterson and its agents had in effect, both before and at the time of the events alleged herein, a policy, practice and custom of failing to properly train and supervise its police officers in the proper use of force when encountering and investigating incidents involving emotionally disturbed persons.

46.     These defendants failed to establish adequate training and supervision programs in order to properly train its police employees to carry out their official duties in effectuating lawful seizures of its citizens who presented as emotionally disturbed persons and applying reasonable degrees of force in connection with their encounter and investigation of such persons.  The mental health concerns of such emotionally disturbed persons requires consideration by police employees when utilizing force during their encounters.   Such considerations include, but are not limited to, the use by police employees of: de-escalation tactics with the disturbed person to the extent possible; verbal techniques to help reduce mental agitation, fear and non-compliance of the disturbed person before resorting to the use of force; minimizing verbal challenges or attempts to intimidate the disturbed person; showing patience and repeating instructions and commands to the disturbed person; refrain from attempts to take physical control of the disturbed person to minimize the likelihood of further struggle or exacerbation of their emotional distress; minimize the intensity and duration of physical restraints that would restrict the disturbed person's breathing and airways; and using one's own body weight to physically pin down a disturbed person.

47.     Defendant, City of Paterson's and its agents' training and supervision of use of force during encounters with emotionally disturbed persons, whether in written policy and/or in in-service training was deficient.  Officers, such as Defendants, Officer Avila, Officer Lucero and Officer Wanamaker, are not properly trained that use of force and

physical restraints should be minimized to the extent possible when encountering emotionally disturbed persons.  Rather, all too often in the City of Paterson, police officers are too quick to utilize force and physical restraints during encounters with emotionally disturbed persons rather than conduct themselves in a reasonable manner with the goal of de-escalating a situation rather than promoting likely confrontation and struggle due to emotional distress.

48.     In this case, the actions of Defendants, Officer Avila, Officer Wanamaker and Officer Lucero in failing to attempt to de-escalate the situation with Decedent, quickly utilizing physical force and significant body restraints upon him, covering his face and restricting his airway for extended time, while using used their hands to repeatedly punch and strike Decedent about his body and face while he was unarmed and outnumbered and while he was showing clear signs of emotional and mental distress, was excessive, unlawful, and unconstitutional.

49.     Prior to this incident, Defendant, City of Paterson and its agents were put on actual or constructive notice that their training and supervision of its police officers when encountering emotionally disturbed persons was inadequate.  There have been instances of excessive and unreasonable force perpetrated against such persons prior to the encounter with Decedent that put the City of Paterson on notice.

50.     In July 2012, Saulo Del Rosario was fatally shot by a Paterson police officer inside his home after his family called 911 reporting their concern of his mental health.  Mr. Del Rosario was behaving erratically when an officer shot him in his face while he was inside his bedroom.  Thereafter, in October 2016, Larry Bouie was acting erratically in the street outside the Paterson Police Department when an officer responding to a call of an emotionally disturbed person allegedly shot him shortly after confronting him. Subsequently, in March 2017, Ramon Andrade was fatally shot by a Paterson police officer

who responded to a report of an erratic man in the street with a knife. According to Mr. Andrade's family, he was schizophrenic but not dangerous.  One (1) month later, the Paterson Police Department publically announced a new program to purchase and train its police officers on the use of Taser guns as an alternative to the use of deadly force admitting it was due, in part, to the prior fatal shootings involving emotionally disturbed persons. The department chose to purchase and train its officers on the use of Taser guns, rather than provide them with de-escalating training in dealing with emotionally disturbed people in order to find non-violent ways to resolve those types of encounters.  These instances similarly involve allegations of officers using excessive force on emotionally disturbed individuals without provocation and absent any reasonable attempts to de-escalate the situation and not exacerbate the person's emotional distress.  The outcome of these cases does not matter, what matters is that it created actual or constructive knowledge that its officers were alleged to be involved in incidents of excessive force with such persons.

51.     Defendant, City of Paterson also possessed actual or constructive knowledge that its police officers utilized disproportionate amounts of force when specifically confronting emotional disturbed persons.  Between 2012 to 2019, prior to the incident in this case, Defendant's police officers completed thousands of Use of Force Reports describing incidents where they utilized force upon members of the public.  According to said reports, when officers encountered an emotionally disturbed person or person suspected of being on drugs, the officers regularly used more force consisting of their hands and legs to punch, kick, strike and choke rather than lesser amounts of force such as using compliance holds or chemical agents on persons not exhibiting any signs of emotional distress.  These reports further demonstrate the pattern and practice by Paterson police officers to escalate confrontational situations with emotionally disturbed persons, rather than de-escalate, by

using more force upon such specific persons further evidencing Defendant's ineffective training and supervision of its officers during such encounters.

52.     Additionally, prior to the incident presented in this case, Defendant, City of Paterson and its agents also knew of a prior incident where its police officers assaulted an emotionally disturbed person and tried to cover it up.  In March 2018, Paterson police officers, Roger Then and Ruben McAusland, assaulted an emotionally disturbed man inside the hospital after he was taken there due to suicidal threats.  Video surveillance from inside the hospital and also from Officer Then's cellphone captured the officers assaulting the victim while in the wheelchair and then again in the hospital room.  The officers were later indicted on criminal charges stemming from the assault and attempting to cover up their actions.  Despite such knowledge, Defendant, City of Paterson continued with its deficient training and supervision program of its officers with respect to de-escalating encounters with emotionally disturbed people as described aforesaid.  Said Defendant also continued its practice of not requiring its officers to wear body cameras that would capture their encounters with such emotionally disturbed persons.  In this case, Decedent was assaulted and physically restrained with unreasonable intensity and duration by Defendants, Officer Avilla and Officer Wanamaker while being transported in an ambulance to the hospital due to his mental distress.  Said officers were not wearing body cameras at that time and therefore knew that their conduct could not subsequently be reviewed in real time when assessing the reasonableness of their utilization of force upon Decedent.

53.     Despite actual or constructive notice, Defendant, City of Paterson, and its agents failed to properly train and supervise its officers, going forward, in proper use of force procedures when confronting emotionally disturbed persons even though they knew or should have known as a result of prior similar incidents as described herein that any such training and supervision program over time was not effectively preventing constitutional

violations for such persons. Their continued use of a program that they know or should know had failed to prevent tortious conduct constitutes conscious disregard and deliberate indifference to the consequences.

54.     The failure on behalf of these defendants to adequately train and supervise its police employees as aforesaid amounted to deliberate indifference to the fact that inaction would obviously result in the violation of its citizens' Fourth Amendment Rights to be free from unlawful seizures and excessive force at the hands of the police.

55.     The failure on behalf of these defendants to adequately train and supervise its police employees including, but not limited to, Defendants, Officer Avila, Officer Lucero and Officer Wanamaker, proximately caused the violation of Decedent's Fourth Amendment Rights to be free from excessive force at the hands of the police.

56.     As a direct and proximate result of the aforementioned violations of Decedent's civil and constitutional rights actionable under 42 U.S.C. § 1983, Decedent was caused to suffer serious bodily injuries resulting in his death and has sustained other losses and damages.

WHEREFORE, Plaintiff, Shaquana D. Duncan, General Administrator and Administrator *Ad Prosequendum* of the Estate of Jameek Lowery, Deceased demands judgment against Defendants, City of Paterson, Officer Avila, Officer Lucero, Officer Wanamaker, John Does 1-25 and ABC Corps. 1- 25, jointly and severally, for compensatory damages, punitive damages, attorney's fees, interest, cost of suit, and such other and further relief as the Court deems equitable and just

## PENDENT STATE LAW CLAIMS

## THIRD COUNT

### Excessive Force In Violation Of New Jersey State Law

57.     Plaintiff repeats and realleges the previous allegations in this First Amended

Complaint as if set forth at length herein.

58.     At all relevant times, Defendants, Officer Avila, Officer Lucero and Officer Wanamaker were acting as an agent, servant, and employee of Defendant, City of Paterson and the Paterson Police Department, in connection with the incident described herein involving Decedent.

59.     All of the aforementioned acts or omissions of Defendants, Officer Avila, Officer Lucero and Officer Wanamaker, constituted excessive force within the meaning of the law.   At all relevant times, Decedent was unarmed and posed no danger to the safety and welfare of these officers and all those around him.

60.     All of the aforementioned acts or omissions of Defendants, Officer Avila, Officer Lucero and Officer Wanamaker, were unreasonable under the circumstances, not justified according to law and deprived Decedent of his federally and state protected constitutional right to be free from excessive force at the hands of the police.

61.     As a direct and proximate result of the aforementioned violations of Decedent's civil rights actionable under both Federal and State Constitutions, he was caused to suffer serious bodily injuries resulting in his death, including permanent loss of ability to function and permanent disfigurement for which medical treatment and expenses are in excess of $3,600 and has sustained other losses and damages.

WHEREFORE, Plaintiff, Shaquana D. Duncan, General Administrator and Administrator *Ad Prosequendum* of the Estate of Jameek Lowery, Deceased demands judgment against Defendants, Officer Avila, Officer Lucero, Officer Wanamaker, John Does 1-25 and ABC Corps. 1- 25, jointly and severally, for compensatory damages, punitive damages, attorney's fees, interest, cost of suit, and such other and further relief as the Court deems equitable and just.

## FOURTH COUNT

### Assault and Battery In Violation Of New Jersey State Law

62.     Plaintiff repeats and realleges the previous allegations in this First Amended Complaint as if set forth at length herein.

63.     At all relevant times, Defendants, Officer Avila, Officer Lucero and Officer Wanamaker were acting as an agent, servant, and employee of Defendant, City of Paterson and the Paterson Police Department, in connection with the incident described herein involving Decedent.

64.     As set forth above, without warning or provocation Officer Avila, Officer Lucero and Officer Wanamaker intentionally attempted to and did physically assault and punch Decedent about his face and body, choked him around his neck and unreasonably restrained him in the ambulance while they transported him to the local hospital for evaluation.  At the time of the assault, Decedent was unarmed and posed no danger to the officers.

65.     All of the aforementioned forcible contact by Defendants, Officer Avila, Officer Lucero and Officer Wanamaker with their attempts to touch and their actual touching of Decedent were without his consent.

66.     All of the aforementioned acts or omissions of Defendants, Officer Avila, Officer Lucero and Officer Wanamaker were unjustified and made with an unlawful amount force and violence and constitute negligent or intentional assault.

67.     As a direct and proximate result of the aforementioned conduct of Defendants, Officer Avila, Officer Lucero and Officer Wanamaker, Decedent was caused to suffer serious bodily injuries resulting in his death, including permanent loss of ability to function and permanent disfigurement for which medical treatment and expenses are in excess of $3,600 and has sustained other losses and damages.

WHEREFORE, Plaintiff, Shaquana D. Duncan, General Administrator and Administrator *Ad Prosequendum* of the Estate of Jameek Lowery, Deceased demands judgment against Defendants, Officer Avila, Officer Lucero, Officer Wanamaker, John Does 1-25 and ABC Corps. 1- 25, jointly and severally, for compensatory damages, punitive damages, attorney's fees, interest, cost of suit, and such other and further relief as the Court deems equitable and just.

<u>**FIFTH COUNT**</u>

**Negligent Retention and Supervision In Violation Of New Jersey State Law**

68.     Plaintiff repeats and realleges the previous allegations in this First Amended Complaint as if set forth at length herein.

69.     At all relevant times, Defendants, John Does 1-25 while acting as the agents, servants, employees or otherwise on behalf of Defendant, City of Paterson and the Paterson Police Department were charged by statute, law, code, regulation, policy, procedure, or other authority to perform their functions and duties in a safe and reasonable manner and to act properly in furtherance of protecting and safeguarding its citizens, including Decedent.

70.     Defendants, John Does 1-25 owed a duty to exercise due and reasonable care in carrying out their functions and duties as assumed towards its citizens, including Decedent.

71.     At all relevant times, Defendants, Officer Avila, Officer Lucero and Officer Wanamaker possessed dangerous propensities to commit unlawful, violent acts of physical abuse and unreasonable use of force while performing their respective duties as a law enforcement officer thereby creating an unreasonable risk of injury to the citizens they were sworn to protect.  Prior to the incident involving Decedent as herein described, each such defendant officer had been involved in past incidents of assaultive behavior and/or were the

subject of allegations concerning their use of excessive force while effectuating seizures of citizens within the City of Paterson.  The personnel files of each such defendant contained documentation noting such prior incidents, including police incident reports, internal affairs investigations and use of force reports.

72.    Defendants, John Does 1-25 knew or should have known of said officers' dangerous propensities based upon the documentation of prior incidents of assaultive behavior contained in each of their personnel files and the risk of injury that they presented to Decedent as well as other citizens.

73.    Defendants, John Does 1-25 acted in a negligent, careless, reckless, or otherwise palpably unreasonable manner, breaching their duty of care owed to Decedent, by retaining said officers in their employment position despite such knowledge of their dangerous propensities and failed to adequately supervise them.

74.    As a direct and proximate result of the aforementioned conduct of these Defendants, Decedent was caused to suffer severe, serious and permanent bodily injuries resulting in his death, including permanent loss of ability to function and permanent disfigurement for which medical treatment and expenses are in excess of $3,600 and has sustained other losses and damages.

WHEREFORE, Plaintiff, Shaquana D. Duncan, General Administrator and Administrator *Ad Prosequendum* of the Estate of Jameek Lowery, Deceased demands judgment against Defendants, City of Paterson, Officer Avila, Officer Lucero, Officer Wanamaker, John Does 1-25 and ABC Corps. 1- 25, jointly and severally, for compensatory damages, punitive damages, attorney's fees, interest, cost of suit, and such other and further relief as the Court deems equitable and just.

**SIXTH COUNT**

**Medical Negligence**

75.     Plaintiff repeats and realleges the previous allegations in this Complaint as if set forth at length herein.

76.     At all relevant times referenced herein, Defendants, St. Joseph's Hospital, Dr. Joseph Affortunato, John Does 1-25 and ABC Corps. 1-25 held themselves out to the general public, and in particular to Decedent, as specializing in the field of providing emergency medical services.  Said Defendants represented to the public that they would be able to evaluate and render emergency medical care to members of the public.

77.     Decedent was under the direct care of Defendants, St. Joseph's Hospital, Dr. Affortunato, John Does 1-25 and ABC Corps. 1-25.  During that time, Decedent presented with various physical and psychological complaints that threatened his health and safety.

78.     Defendants, St. Joseph's Hospital, Dr. Affortunato, John Does 1-25 and ABC Corps. 1-25 had undertaken to evaluate and treat and care for Decedent's condition and owed a duty to him to use due care to insure that the care and treatment was rendered in a reasonable and competent manner.  Defendants breached such duty and negligently and carelessly failed to properly treat and discharge Decedent from their care.

79.     As a direct and proximate result of the negligence of Defendants, St. Joseph's Hospital, Dr. Affortunato, John Does 1-25 and ABC Corps. 1-25, Decedent was caused to suffer serious physical harm and distress resulting in his death.

WHEREFORE, Plaintiff, Shaquana D. Duncan, General Administrator and Administrator *Ad Prosequendum* of the Estate of Jameek Lowery, Deceased demands judgment against Defendants, St. Joseph University Medical Center, Dr. Joseph Affortunato, John Does 1-25 and ABC Corps. 1-25, jointly and severally, for compensatory damages, punitive damages, attorney's fees, interest, cost of suit, and such other and

further relief as the Court deems equitable and just.

## SEVENTH COUNT

### Wrongful Death

80.     Plaintiff repeats and realleges the previous allegations in this First Amended Complaint as if set forth at length herein.

81.     Defendants, Officer Avila, Officer Lucero and Officer Wanamaker had a duty to conduct themselves in a reasonable and lawful manner while engaging with citizens and members of the community including Decedent.   Said Defendants breached their duty of care by assaulting, punching and choking Decedent, unreasonably restraining him while securing and transporting him in an ambulance to a local hospital, and otherwise utilizing unreasonable and disproportionate amount of force upon him.

82.     Defendants, St. Joseph's Hospital, Dr. Affortunato, John Does 1-25 and ABC Corps. 1-25 had a duty to exercise reasonable care in rendering medical treatment to Decedent.  Said Defendants breached their duty by rendering inadequate treatment and discharging Decedent while presenting as a danger to himself and his well-being.

83.     As a result of the aforementioned conduct and negligence of said Defendants, Decedent was caused to sustain severe and permanent injuries resulting in his death, all to the pecuniary damage, injury and economic loss to Decedent's dependents and heirs at law.

84.     This action has been commenced within two (2) years of the death of Decedent.

85.     There is, and at the time of the incident set forth herein, in force and effect in the State of New Jersey a wrongful death statute known and designated as N.J.S.A. 2A:31-1 through 6, and Plaintiff, Shaquana D. Duncan, General Administrator and Administrator *Ad Prosequendum* of the Estate of Jameek Lowery, Deceased brings this action pursuant to

the provisions thereof for the benefit of the next of kin of Decedent.

WHEREFORE, Plaintiff, Shaquana D. Duncan, General Administrator and Administrator *Ad Prosequendum* of the Estate of Jameek Lowery, Deceased demands judgment against Defendants, City of Paterson, Officer Avila, Officer Lucero, Officer Wanamaker, St. Joseph's University Medical Center, Dr. Joseph Affortunato, John Does 1-25 and ABC Corps. 1-25, jointly and severally, for compensatory damages, punitive damages, attorney's fees, interest, cost of suit, and such other and further relief as the Court deems equitable and just.

## EIGHTH COUNT

### Survival Action – Pain and suffering & loss of enjoyment of life

86.    Plaintiff repeats and realleges the previous allegations in this First Amended Complaint as if set forth at length herein.

87.    As a result of the aforementioned actions on the part of all Defendants, Decedent was caused to live in great pain from the time of their involvement with him during the aforementioned incident until the time of his death.  During that time, he endured substantial pain and suffering, loss of enjoyment of life and other hedonic damages as authorized by law.

88.    This cause of action for survival damages is brought pursuant to the authority of <u>N.J.S.A.</u> 2A:15-3.

WHEREFORE, Plaintiff, Shaquana D. Duncan, General Administrator and Administrator *Ad Prosequendum* of the Estate of Jameek Lowery, Deceased demands judgment against Defendants, City of Paterson, Officer Avila, Officer Lucero, Officer Wanamaker, St. Joseph's University Medical Center, Dr. Joseph Affortunato, John Does 1-25 and ABC Corps. 1-25, jointly and severally, for compensatory damages, punitive damages, attorney's fees, interest, cost of suit, and such other and further relief as the

Court deems equitable and just.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.


## **NOTICE OF DESIGNATION OF TRIAL COUNSEL**

Plaintiff hereby designates Paul R. Rizzo, Esq. as trial counsel in connection with the above-captioned matter.


## **CERTIFICATION OF COUNSEL**

The undersigned hereby certifies that at the time of filing this Complaint, the matter in controversy is not the subject of any other action pending in any court and/or arbitration proceeding. The undersigned is unaware of any non-party who should be joined in this action at this time

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, P.C.**

*/s/ Nicholas F. Pompelio*

By: _____
Nicholas F. Pompelio, Esq.
Attorneys for Plaintiff

Dated: April 13, 2021