*Nicholas F. Pompelio, Esq./Attorney ID #015712008*
*Paul R. Rizzo, Esq./Attorney ID #020011980*
*Lisa M. Fittipaldi, Esq./Attorney ID #004811985*
**DiFrancesco, Bateman, Kunzman,**
  **Davis, Lehrer & Flaum, P.C.**
Attorneys-at-Law
15 Mountain Boulevard
Warren, NJ 07059
(908) 757-7800
*Attorneys for Plaintiff*
(Our File No.: P11161)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# (NEWARK VICINAGE)

| | |
|---|---|
| SHAQUANA D. DUNCAN as GENERAL ADMINISTRATOR AND ADMINISTRATOR *AD PROSEQUENDUM* OF THE ESTATE OF JAMEEK LOWERY, Deceased<br><br>                              Plaintiff,<br><br>        vs.<br><br>CITY OF PATERSON, NEW JERSEY  a municipal corporation of the State of New Jersey; OFFICER MICHAEL AVILA; OFFICER MUCIO LUCERO; OFFICER KYLE WANAMAKER; in their official and individual capacities; ST. JOSEPH'S UNIVERSITY MEDICAL CENTER; DR. JOSEPH AFFORTUNATO; Fictitious Designation, John Does (#1-25); Fictitious Designation, ABC Corps. (#1-25).<br><br>                              Defendants. | CIVIL ACTION NO.<br>2:20-cv-08471-MCA-LDW |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT, CITY OF PATERSON'S MOTION TO DIMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

(Motion Date: June 21, 2021)

On the Brief: Nicholas F. Pompelio, Esq.

{A1093132.1 }

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

    Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

    Rules and Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   I.  LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   II.  DEFENDANT CITY'S REQUEST TO DISMISS COUNTS I, III, IV AND VI
       AGAINST IT SHOULD BE DIMISSED AS MOOT . . . . . . . . . . . . . . . . . . . . . . . . 5

   III.  PLAINTIFF'S AMENDED COMPLAINT SATISFIES THE PLEADING
       REQUIREMENTS NECESSARY TO IMPOSE §1983 MUNICIPAL
       LIABILITY AGAINST DEFENDANT CITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.  Plaintiff's Amended Complaint Sufficiently Identifies A Deficient
           Policy, Practice And Custom of Defendant City With Respect
           To Its Police Officers' Investigation and Handling of Incidents
           Involving Emotionally Disturbed Persons That Is Directly
           Applicable To This Matter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       B.  Plaintiff's Amended Complaint Sufficiently Alleges A Pattern
           Of Similar Constitutional Violations Showing Deliberate
           Indifference To Support §1983 Liability . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   IV.  PLAINTIFF'S AMENDED COMPLAINT ALLEGES SUFFICIENT FACTS
       TO PROCEED ON STATE LAW CLAIMS OF NEGLIGENT RETENTION
       AND SUPERVISION AGAINST DEFENDANT CITY . . . . . . . . . . . . . . . . . . . . . . 14

   V.  PLAINTIFF'S CLAIMS FOR WRONGFUL DEATH AND SURVIVORSHIP
       AGAINST DEFENDANT CITY ARE ALSO BASED ON NEGLIGENT
       CONDUCT AND SHOULD NOT BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . .16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

### Cases

Adams v. City of Camden, 461 F. Supp. 2d 263 (D.N.J. 2006) . . . . . . . . . . . . . . . . . . 7, 11

Ashcroft v. Iqbal, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 16

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

Bistrian v. Levi, 696 F.3d 352 (3rd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Chincehllo v. Fenton, 805 F. 2d 126 (3rd Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

City of Canton, Ohio v. Harris, 489 U.S. 378 (1989) . . . . . . . . .. . . . . . . . . . . . . . . . . 6, 7

Colburn v. Upper Darby Tp., 838 F. 2d 663 (3rd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 6

Denis v. City of Newark, 307 N.J. Super. 304, 314 (App. Div. 1998) . . . . . . . . . . . . 14, 15

Estate of Del Rosario v. Paterson Police Dep't., 2015 U.S. Dist. LEXIS 50571
    (D.N.J., Apr. 17, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

Freedman v. City of Allentown, Pa., 853 F.2d 1111 (3rd Cir. 1988) . . . . . . . . . . . . . . . . . 6

Fleisher v. Standard Ins. Co., 679 F.3d 116 (3rd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . 4

Fowler v. UPMC Shadyside, 578 F.3d 203 (3rd Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 4

Hedges v. United States, 404 F.3d 744 (3rd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Merman v. City of Camden, 824 F. Supp. 2d 581 (D.N.J. 2010) . . . . . . . . . . . . . . . . . . 13

Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978) . . . . . . . . . . . . 6

Philips v. Cty. of Allegheny, 515 F.3d 224 (3rd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . .4, 9

Pinkston v. City of Jersey City, 2020 U.S. Dist. LEXIS 131061 (July 24, 2020) . . . . . . . . 14

Polk County v. Dodson, 454 U.S. 312 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Sands v. McCormick, 502 F.3d 263 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Santiago v. Warminster Twp., 629 F.3d 121 (3rd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 5

V.A. v. N.J. Nat'l Guard Youth Challenge Program, 2007 U.S. Dist. LEXIS 49288
    (D.N.J. July 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

### Rules and Statutes

Fed. R. Civ. Pro. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. Pro. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## INTRODUCTION

Plaintiff, Shaquana D. Duncan, is the mother of Decedent, Jameek Lowery's young child and the dully-appointed General Administrator and Administrator *Ad Prosequendum* of his Estate.

On July 8, 2020, Plaintiff filed a ten-count civil Complaint against Defendant, City of Paterson (hereinafter referred to as "Defendant City") and three (3) of its police officers Defendants, Officer Michael Avila, Officer Kyle Wanamaker and Officer Mucio Lucero (hereafter referred to at times collectively as "Defendant Officers") who were involved in the encounter leading to Decedent's death. (ECF No. 1, Plaintiff's Complaint and Jury Demand).   On March 31, 2021, the Court entered a Letter Order granting in part and denying in part Defendants' motion to dismiss in lieu of an answer. (ECF No. 30, hereinafter referred to as "dismissal order").   Per said Order, the Court afforded Plaintiff 14-days thereafter to file an amended complaint. Id.  On April 13, 2021, Plaintiff filed an eight-count First Amended Complaint against Defendants. (ECF No. 31, hereinafter referred to as "Amended Complaint").   Thereafter, Defendant City filed a second motion to dismiss in lieu of answer that is presently before the Court.

As with Defendant City's first motion to dismiss, its instant motion again sets forth various untruths and unsupported allegations, which it presents as objective facts. Defendant City again claims from the outset that Decedent's death was "caused by decedent's voluntary drug use" and that he was "the proximate cause of his own death". (ECF No. 34-1, Defendant's Brief, pg. 1).   Defendant City also states that "Plaintiff's complaint alleges a death resulting from Decedent's own illicit drug use". Id. at pg. 13. These are not the facts and not the allegations of Plaintiff.   Discovery in this case will demonstrate that Decedent's death was directly caused by traumatic bodily injury and harm he suffered at the hands of the Defendant Officers who secured and transported him in an

ambulance and was not caused in any manner due to his ingestion of common, recreational drugs.

More importantly for purposes of determining the issues on the instant motion to dismiss, Plaintiff's Amended Complaint specifically alleges that Decedent's death resulted from the actions and conduct of Defendant Officers who inflicted serious and permanent bodily injury upon him resulting in this death. See e.g., Amended Complaint at ¶¶ 42, 56, 61, 67, 74 and 83).   Plaintiff specifically alleges that such actions include the following:

- Defendant Officers continuing to forcibly restrain Decedent inside the ambulance; handcuffing both of his arms to the stretcher and strapping his waist and legs down; forcibly restraining Decedent's head and getting on top of him holding down his waist with their own bodies; and while doing so, using their hands to punch and strike Decedent about his body and face and choking him around his neck. Id. at ¶28.

- While being transported in the ambulance, Defendant Avila straddling Decedent's waist and legs forcibly pinning and restraining him to the stretcher as Defendant Wanamaker stood over his head holding his head and shoulders down. Id. at ¶31.

- Decedent's airway was restricted and he was suffering traumatic injuries from being assaulted while being transported in the ambulance to the hospital and that his body went limp, he lost consciousness and stopped breathing prior to arriving at the hospital. Id. at ¶32.

- Upon arriving at the hospital, a nurse discovered that he did not have a pulse.  He was suffering from brain damage and resulting kidney and organ failure at this time. Id. ¶33, 34.

These are Plaintiff's factual allegations as pled in her Amended Complaint concerning the actions that resulted and caused Decedent's death.  At this early stage in the litigation, the Court must accept these allegations as true and all reasonable inferences derived from same in determining the pending motion to dismiss.  Defendant City's self-serving, baseless claims that Decedent died from ingesting drugs are not set forth in Plaintiff's Amended

Complaint, not part of the record at this time and should be completely disregarded by the Court on the present motion. Once again, Defendant City purposely ignores the facts alleged in Plaintiff's Amended Complaint regarding its officers' conduct merely in an attempt to slander Decedent and shift the blame for his tragic, preventable death to his recreational drug use. This mischaracterization of the facts is misleading and woefully misplaced on a motion to dismiss.

Furthermore, contrary to Defendant City's contentions, the mental status of Decedent during his encounter with Defendant Officers is certainly relevant to and supports Plaintiff's claims that his injuries and death resulted from the City's application or omission of unconstitutional policies, customs and practice. The Amended Complaint alleges sufficient facts to support all claims asserted against Defendant City concerning its liability for constitutional torts and claims arising under state law and therefore the Court should deny its pending motion to dismiss in its entirety.

## **LEGAL ARGUMENT**

### I.    **LEGAL STANDARD**

Dismissal of a complaint, in whole or in part, is permitted pursuant to Fed. R. Civ. P. 12(b)(6) if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'ground' of his 'entitlement' to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Dismissal of a complaint, pursuant to Rule 12(b)(6) is appropriate only when the complaint does not provide defendant fair notice of a legally cognizable claim, and the factual basis on which it rests. Id.

The moving party bears the burden of showing that no claim has been stated. Hedges v. United States, 404 F.3d 744, 750 (3rd Cir. 2005).

In deciding a motion to dismiss, the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Philips v. Cty. of Allegheny, 515 F.3d 224, 228 (3rd Cir. 2008).  A motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff failed to set forth sufficient facts to state a claim for relief that is plausible on its face. Id. at 504; Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3rd Cir. 2012).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Dismissal is warranted only if there is no "reasonable expectation that discovery will reveal evidence" to support the plaintiff's claims. Twombly, supra, 550 U.S. at 557. "Detailed factual allegations are not required." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3rd Cir. 2009); Twombly, supra, 550 U.S. at 555.  It is not enough that the Court suspects the plaintiff will ultimately "fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Twombly, supra, 550 U.S. at 563 n.8.  A plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. Phillips, supra, 515 F.3d at 234.

Based upon the authority of Iqbal and Twombly, the United States Court of Appeals for the Third Circuit expressed that a District Court should use a three-part analysis when reviewing the sufficiency of a complaint to determine whether it meets the pleading standard, stating:

> First, the court must take note of the elements a plaintiff must plead to state a claim.   Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 129-30 (3rd Cir. 2010) (internal quotations and citations omitted); see also, Bistrian v. Levi, 696 F.3d 352, 365 (3rd Cir. 2012).

In accordance with Iqbal and Twombly, in this case Plaintiff's Amended Complaint states claims for relief with respect to her causes of action asserted against Defendant City for municipal liability concerning the violation of constitutional torts, along with her claims against the City arising under state law.   Plaintiff cured all deficiencies noted by the Court with is prior dismissal order and has provided sufficient factual allegations and inferences drawn therefrom to support the challenged claims.   Therefore, Defendant City's motion to dismiss the entirety of Plaintiff's Complaint should be completely denied.

## II.   DEFENDANT CITY'S REQUEST TO DISMISS COUNTS I, III, IV AND VI AGAINST IT SHOULD BE DIMISSED AS MOOT

Plaintiff filed her Amended Complaint pursuant to the Court's ruling and reasons described in its dismissal order on Defendant's first motion to dismiss.  Counts I and III of the Amended Complaint concern Plaintiff's federal and state constitutional claims for excessive force against Defendant Officers.  Count IV of the Amended Complaint concerns Plaintiff's state law claim for assault and battery against Defendant Officers.  Count VI of the Amended Complaint concerns Plaintiff's claim for medical negligence against non-municipal defendants.   The "wherefore" clauses for each of these counts clearly state that these specific claims are not being asserted against Defendant City.   As such, Defendant City's request to dismiss these Counts against it with prejudice should be denied as moot.

**III.     PLAINTIFF'S      AMENDED      COMPLAINT      SATISFIES      THE      PLEADING
REQUIREMENTS  NECESSARY  TO  IMPOSE  §1983  MUNICIPAL  LIABILITY
AGAINST DEFENDANT CITY**

Municipalities are legal entities that can be found liable under §1983. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978).  While it is well-established that municipal liability under §1983 cannot be proved simply under the *respondeat superior* doctrine or vicarious liability, liability can be found where the municipality itself causes the constitutional violation at issue. Id. at 694-95; see also, City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).  In order to establish municipal liability, a plaintiff must demonstrate that action pursuant to a municipal policy or custom caused their injury. Monell, supra, 436 U.S. at 691; see also, Canton, supra, 489 U.S. at 385.  An official policy or custom "may be inferred from omissions and informal acts as well as from formal acts." Freedman v. City of Allentown, Pa., 853 F.2d 1111, 1116 (3rd Cir. 1988).

The Third Circuit has long recognized that there can be circumstances "in which a deficient training policy can form the basis for municipal liability under section 1983." Id. at 1117; see also, Colburn v. Upper Darby Tp., 838 F.2d 663, 672-73 (3rd Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3rd Cir. 1986).  Likewise, the United States Supreme Court has also held that inadequate police training may serve as the basis for §1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Canton, 489 U.S. at 388.  This rule is consistent with Supreme Court precedent that a municipality can be liable under §1983 only where its policies are the "moving force behind the constitutional violation." Id. at 389; citing, Monell, supra, 436 U.S. at 694 and Polk County v. Dodson, 454 U.S. 312, 326 (1981).  The Supreme Court has noted that:

> [t]he need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said

> to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible and for which the city may be held liable if it actually causes injury.

Canton, supra, 489 U.S. at 390.

In order to pursue a claim against a municipality for inadequate training of its police officers, a "plaintiff must show the municipality's deliberate indifference by (1) identifying the deficient municipal training program or policy, or (2) showing a pattern of constitutional violations as to which the municipality has disregarded its obligations to remedy such misconduct." Adams v. City of Camden, 461 F. Supp. 2d 263, 267-68 (D.N.J. 2006).

**A. Plaintiff's Amended Complaint Sufficiently Identifies A Deficient Policy, Practice And Custom of Defendant City With Respect To Its Police Officers' Investigation and Handling of Incidents Involving Emotionally Disturbed Persons That Is Directly Applicable To This Matter**

Count II of the Amended Complaint asserts claims for municipal liability against Defendant City that goes beyond mere labels, conclusions and formulaic recitation of the elements of §1983 municipal liability.   The Amended Complaint identifies specific polices, practices and customs of Defendant City beyond simply alleging that it failed to properly train its officers in the use of force.   Plaintiff alleges in her Amended Complaint that Defendant City maintained an unconstitutional policy, practice and custom of failing to properly train and supervise its police officers in the proper use of force when specifically encountering and investigating incidents involving emotionally disturbed persons. Amended Complaint at ¶45.

Unsatisfied with Plaintiff's well-pleaded allegations identifying a specific policy, custom or practice, Defendant City attempts to use semantics and misconstrue the issue by arguing that this case does not concern the police encounter of an emotional disturbed person but rather confrontation of "erratic individuals" involving "involuntary commitment." Defendant tries to claim that the terms "mental disturbance" and "emotionally disturbed" are

inapplicable to this matter. Defendant also attempts to convince the Court that consideration of its officers training on the use of force against emotionally disturbed individuals is irrelevant to Plaintiff's claims. The Court should categorically reject such unconvincing and misleading efforts.

Defendant City baldly asserts that "Plaintiff was not emotionally disturbed" but rather was high on drugs.[1] (Defendant's Brief at pg. 8). Such a claim is not only disputed by the pleaded allegations of Decedent's physical and mental condition, but is also directly contradicted by Defendant Officers of which the City is well aware.

Plaintiff's Amended Complaint alleges that Decedent continued exhibiting heightened signs of visible paranoia and strange behavior during and after his initial discharge from the hospital. Amended Complaint at ¶18.   Plaintiff further alleges that Decedent walked into the Paterson Police Department lobby at approximately 3:45am and approached the front desk telling the officer on duty that he was afraid because he thought that people were trying to kill him, while appearing paranoid, sweating and in visible distress. Id. at ¶22.  Plaintiff also claims that as the Defendant Officers restrained Decedent into the ambulance, he was afraid and stated that he thought the police officers were going to kill him. Id. at ¶27.  He exhibited clear signs of paranoia, erratic behavior and emotional distress while engaging with them. Id.  He told them that he was afraid because he thought they would kill him and he tried to get out of the ambulance but they would not allow him to leave. Id. at ¶27.

Plaintiff alleges that Decedent exhibited "heightened signs of visible paranoia", "strange behavior", "appeared paranoid, sweating and in visible distress" and "exhibited clears signs of paranoia, erratic behavior and emotional distress".  He repeatedly told the

---

[1] It is assumed that Defendant was referring to Decedent as not being emotionally disturbed rather than the Plaintiff, Ms. Duncan who was not personally involved in the underlying incident.

officers that he was afraid and thought that they were trying to kill him.  At this stage, the Court is required to accept these factual allegations as true and draw all inferences therefrom in the light most favorable to Plaintiff. See, Philips, supra, 515 F.3d at 228.   As such, there should be no dispute the Plaintiff's Amended Complaint sets forth factual allegations that Decedent encountered Defendant Officers while exhibiting heightened signs of emotional distress.   At the least, sufficient facts exist to infer that Decedent was emotionally disturbed when interacting with the Defendant Officers.  There are enough facts pled in the Amended Complaint to raise a reasonable expectation that discovery will reveal evidence of Decedent's heightened paranoia and emotional distress when confronting the officers involved in restraining him. The Court should not be persuaded by Defendant's self-serving, contradictory interpretation of these pleaded factual allegations in determining the pending motion to dismiss.   The underlying reason why Decedent was emotionally disturbed, whether it was due to his ingestion of drugs or his fear of being killed by the police, is not relevant at this time and should not prevent his claims from proceeding past the initial pleading stage.

Moreover, Defendant City's claim that Decedent was "not emotionally disturbed" is directly contradicted by the Defendant Officers.  So too is its claim that such a phrase is an ambiguous term of art unknown to the police.   While the Court may generally not consider anything beyond the four corners of the complaint when determining a motion to dismiss, it may rely on attached exhibits. See, Sands v. McCormick, 502 F.3d 263 (3rd Cir. 2007). Plaintiff is compelled to respond to Defendant City's patently false claim asserted in support of this motion that the term "emotionally disturbed" is inapplicable to this case or unknown to its officers.

The police reports authored by the Defendant Officers directly contradict the claim that this case does not concern their encounter with a person classified as "emotionally

disturbed".   Defendant Officer Lucero and Officer Wanamaker prepared a joint incident report concerning their encounter with Decedent.   See, **Exhibit "A"** attached to the Certification of Nicholas F. Pompelio, Esq. dated June 7, 2021 submitted herein in support of Plaintiff's opposition (hereinafter "Pompelio Cert."), 2-page joint Incident Report dated January 5, 2019.  According to Officer Lucero and Officer Wanamaker's joint incident report, they specifically identify the type of crime/incident as an "EDP" and coded the incident as "EDP". Id. at pg. 1 of their report.  They also reference Decedent's "state of mind" in their written report as a reason for allegedly deciding not to file charges against him. Id. at pg. 2. Also, according to Defendant Officer Avila, he too coded and identified the underlying type of crime/incident involving Decedent as an "EDP" on the first page of his incident report. See, Exhibit "A" to the Pompelio Cert., 4-page Incident report dated January 5, 2019 by Officer Avila.  According to Officer Avila's narrative report, he specifically wrote that the police dispatcher requested an ambulance to the scene because "the male is an EDP" as he was traveling to the police station to encounter Decedent. Id. at pg. 2 of his report.  He was clearly responding to a known incident involving an emotionally disturbed person.

Additionally, after the incident, each Defendant Officer completed a separate written Use of Force Report stemming from their encounter with Decedent. See, **Exhibit "B"** attached to the Pompelio Cert.  According to each officer's own Use of Force report, all three (3) of them unmistakably identified the type of crime/incident involving Decedent as an "EDP". Id.   There is no dispute that Defendants, Officer Avila, Officer Lucero and Officer Wanamaker, specifically identified their encounter with Decedent as an incident involving an emotionally disturbed person.

Defendant City cannot successfully argue that the underlying incident did not involve an "emotionally disturbed person" when its own police officers specifically state that it did. Defendant Officers understood the meaning of such term because they each included

reference to same in their official written reports concerning their encounter with Decedent.

Contrary to Defendant City's assertions, the fact remains that Decedent's mental condition and visible emotional state are certainly relevant to this matter.  Inquiry of the reasonableness standard into an officer's use of force considers all of the relevant facts and circumstances leading up to the time of utilizing the alleged excessive force.  This inquiry includes consideration of the nature of the harm presented, along with the subject's mental condition and the amount and type of force utilized to handle the specific situation.

**B. Plaintiff's Amended Complaint Sufficiently Alleges A Pattern Of Similar Constitutional Violations Showing Deliberate Indifference To Support §1983 Liability**

A plaintiff may also demonstrate a municipality's deliberate indifference for inadequate training of its police officers by showing a pattern of constitutional violations to which it has failed to remedy such misconduct. Adams, supra, 461 F. Supp. 2d at 267-68. Plaintiff's Amended Complaint sufficiently identifies such prior similar incidents to support the allegation of the City's deliberate indifference to its officers handling encounters with emotionally disturbed persons.  As demonstrated above, the issue of Decedent's emotional distress is acknowledged by the officers involved and also relevant to this matter. Therefore, any prior incidents involving questionable and unreasonable use of force between Paterson police officers and individuals presenting as emotionally disturbed persons is relevant to Plaintiff's Monell claim.

In this case, Plaintiff alleges that Defendant Officers used excessive and unreasonable force upon Decedent soon after they encountered him while he exhibited clear signs of paranoia and emotional distress rather than attempt to de-escalate the situation. Amended Complaint at ¶49.  Decedent was alone, unarmed and outnumbered by the Defendant Officers. Id.  Plaintiff claims these officers quickly utilized physical force and significant body restraints upon Decedent, punched him about his body and face and

restricted his airway for extended periods. Id.   Plaintiff further claims that prior to this incident, Defendant City was on notice that the training and supervision of its police officers when encountering emotionally disturbed persons was inadequate citing in part to prior similar incidents where its officers quickly utilized force, including deadly force, upon similarly disturbed individuals. Id. at ¶49.  However, Plaintiff's Amended Complaint did not end there.  Plaintiff cited three (3) prior specific incidents where the City's police fired their gun at persons presenting with emotional distress shortly after encountering them. Id. at ¶50.  Plaintiff's Amended Complaint includes reference to the approximate date, nature of the force utilized and names of the alleged emotionally disturbed persons during these incidents.  Id.   Plaintiff's allegations further include reference to a prior incident where specific officers were indicted on criminal charges stemming from their assault of an emotionally disturbed person and their attempts to cover up their actions. Id. at ¶52.

Defendant City does not dispute the existence of these prior incidents.  Instead, the City simply attempts to distinguish the factual circumstances of those cases to the incident at hand arguing they bear no relevance to the facts of this matter.  Such attempts are misplaced and unconvincing.  First, Plaintiff's reference to prior similar incidents speak for themselves and should be accepted by the Court as true at this stage.  Reasonable inferences can be drawn based upon these allegations that the City knew or should have known of the likelihood that its police officers were quick to utilize disproportionate force upon emotionally disturbed persons but failed to adequately address same since similar incidents continued to occur.  Second, these prior similar incidents do not have to be factually identical to the case at hand in order to be relevant to Plaintiff's Monell claims.  The outcome of these prior similar incidents does not matter but rather serve to demonstrate that they created actual or constructive knowledge on behalf of the City that its officers were alleged to be involved in incidents of excessive force with emotionally disturbed persons.

Additionally, Plaintiff's <u>Monell</u> claims also include allegations that the officers' own reporting on prior use of force incidents demonstrated a pattern and practice by its police officers escalating confrontational situations with emotionally disturbed persons. <u>Id</u>. at ¶51. The Amended Complaint claims that the Use of Force Reports prepared by Defendant's own police officers between 2012 to 2019 demonstrate that officers regularly used more force upon emotionally disturbed suspects consisting of their hands and legs to punch, kick, strike and choke rather than lesser amounts of force such as using compliance holds or chemical agents on persons not exhibiting any signs of emotional distress. <u>Id</u>. Defendant's motion to dismiss is silent on these allegations based upon the Use of Force Reports, which serve as additional grounds to demonstrate a failed policy or custom. <u>See</u>, <u>Merman v. City of Camden</u>, 824 F. Supp. 2d 581, 591-597 (D.N.J. 2010)(denying summary judgment to a city on <u>Monell</u> claims for its failure to train and supervise based in part upon the existence of internal affairs reports and a large number of unsubstantiated claims against officers that could support a jury determination that the city inadequately investigated allegations of use of excessive force and other constitutional violations constituting deliberate indifference).

Plaintiff's Amended Complaint pleads factual allegations based upon specific prior incidents and reporting of officers' use of force that support reasonable and logical inferences to establish her <u>Monell</u> claims.  Such well-pled allegations go beyond mere recital of the necessary elements for §1983 municipal liability that this Court noted with its dismissal order on Plaintiff's initial Complaint.  Plaintiff has alleged sufficient facts to support that Defendant City established a policy or custom causing the violation of Decedent's constitutional rights as an emotionally disturbed, unarmed and outnumbered person encountering its police officers so that a jury could determine it was the driving force behind Defendant Officers' conduct.  Therefore, the <u>Monell</u> claims asserted against Defendant City in Count II should not be dismissed at this time.

IV.     **PLAINTIFF'S AMENDED COMPLAINT ALLEGES SUFFICIENT FACTS TO PROCEED ON STATE LAW CLAIMS OF NEGLIGENT RETENTION AND SUPERVISION AGAINST DEFENDANT CITY**

The District Court has noted that a cause of action for negligent retention and supervision "can exist under the New Jersey Tort Claims Act where a police department knew or should have known of a dangerous propensity in a police officer." Estate of Del Rosario v. Paterson Police Dep't, 2015 U.S. Dist. LEXIS 50571, *14 (D.N.J., Apr. 17, 2015); citing, Denis v. City of Newark, 307 N.J. Super. 304, 314 (App. Div. 1998). Additionally, courts have "consistently rejected" a municipality's "argument that the NJTCA bars liability for negligent supervision in the face of an employee's willful conduct." Pinkston v. City of Jersey City, 2020 U.S. Dist. LEXIS 131061, *29 (July 24, 2020); citing, V.A. v. N.J. Nat'l Guard Youth Challenge Program, 2007 U.S. Dist. LEXIS 49288, *9 (D.N.J. July 9, 2007). Indeed, a municipality may be liable for the supervision of its officers "even though it is immune from vicarious liability under respondeat superior." Pinkston, supra, 2020 U.S. Dist. LEXIS 131061 at *29, citing, V.A., supra, 2007 U.S. District 49288 at *12.

In this case, Count V of Plaintiff's Amended Complaint does contain factual allegations beyond mere legal conclusions to support her claim for negligent retention and supervision. Plaintiff alleges that prior to the underlying incident, each Defendant Officer had been involved in past incidents of assaultive behavior and/or were the subject of allegations concerning their use of excessive force while effectuating seizures of citizens within the City of Paterson. Amended Complaint at ¶71. Plaintiff goes on to allege that the personnel files of each such officer contain documentation noting such prior incidents, including police incident reports, internal affairs investigations and use of force reports. Id. Plaintiff further claims that the department knew or should have known of these officers' dangerous propensities based upon the documentation of prior incidents of assaultive

behavior contained in each of their personnel files. Id.  Plaintiff therefore sufficiently pled facts to support why and how the department knew of its officers' dangerous propensities.

In Estate of Del Rosario, a case against the same municipal defendant in this case, the plaintiff supported his negligent retention and supervision claims by alleging that the municipality was "on notice" of the failure to control its employees by having "notice of prior violations." Id. at 14.  That was the extent of the pleadings for those claims in that case. Id.  However, the District Court rejected the municipality's motion to dismiss finding such facts satisfied the pleading requirement putting the municipality on notice of the allegations against them. Id.

Here, Plaintiff has alleged and pled similar facts as in Estate of Del Rosario including additional facts that the Defendant Officer's personnel files contain documentation of prior incidents of assaultive behavior.  The Court must accept these allegations as true and all reasonable inferences derived therefrom. Defendant asserts without legal support that Plaintiff is required to identify specific dates, citizens, locations, and sanctions of such prior incidents in order to put it on notice of the dangerous propensities of its officers.  Such specificity is not required, especially at this early stage in the litigation. See id. at *14. Plaintiff is entitled to conduct discovery to review all documents in Defendant Officers' personnel files pertaining to their discipline history in order to support her claims for negligent retention and supervision. See, Denis, supra, 307 N.J. Super. at 14-16.  Plaintiff cannot be expected, nor is she required, to provide such detailed factual allegations at this stage before discovery has commenced as Defendant argues.

Therefore, the Court should reject Defendant City's request to dismiss Count V of Plaintiff's Amended Complaint.

V.   **PLAINTIFF'S CLAIMS FOR WRONGFUL DEATH AND SURVIVORSHIP AGAINST DEFENDANT CITY ARE ALSO BASED ON NEGLIGENT CONDUCT AND SHOULD NOT BE DISMISSED**

This Court has previously rejected Defendant City's request to dismiss Plaintiff's wrongful death and survivorship claims against it.   Per the Court's dismissal order, it specifically found that such state law claims allege negligence rather than intentional conduct and that the "NJTCA provides the City no immunity for these claims sounding in negligence." (ECF No. 30, pg. 7).   Unsatisfied with the Court's clear ruling, Defendant City again asks the Court to dismiss these claims arguing they center on intentional conduct. Defendant conveniently highlights only a portion of the allegations in the Amended Complaint on these claims that the officers breached their duty by "assaulting, punching, and choking Decedent" in attempts to misconstrue the claims as only involving intentional conduct.   Such efforts are completely unconvincing and should be rejected.

As with Plaintiff's initial Complaint, her Amended Complaint asserts claims for wrongful death against all defendants, including Defendant City based upon the Defendant Officers' breaching:

> their duty of care by assaulting, punching and choking Decedent, **unreasonably restraining** him while securing and transporting him in an ambulance to a local hospital, and **otherwise utilizing unreasonable and disproportionate amount of force upon him** . . . [and] as a result of the aforementioned conduct **and negligence** of said Defendants.

Amended Complaint, ¶81, 83.   Plaintiff's survivorship claims incorporate such allegations of negligent conduct as well. Id. at ¶87.   Contrary to Defendant's assertions, these claims do not only depict intentional conduct.   As the Court already determined, these claims clearly include unreasonable and negligent conduct by the Defendant Officers.   Therefore, the Court should deny Defendant's second attempt to dismiss these claims as the City is not immune from state law claims sounding in negligence.

Moreover, as briefed to the Court on Plaintiff's opposition to Defendant's first motion to dismiss these claims, the District Court has previously rejected similar arguments on behalf of this same Defendant.  In <u>Estate of Del Rosario</u>, the Court denied the City of Paterson's motion to dismiss claims for wrongful death and survivorship after a police officer shot an individual in the face when responding to a 911 call for an emotionally disturbed person. <u>Estate of Del Rosario</u>, <u>supra</u>, 2015 U.S. Dist. LEXIS at *5.   Not only did the Court reject the attempt to characterize these claims as intentional torts, but it also clearly found that the survivorship claim created a cause of action, which Defendant argues again on this motion.   In <u>Estate of Del Rosario</u>, the Court noted that both the Wrongful Death Act, <u>N.J.S.A.</u> 2A:31-1 and Survivorship Act, <u>N.J.S.A.</u> 2A:15-3, created a cause of action against a party whose negligence or wrongful act causes and results in the death of another person. <u>Id</u>. at *10-11.   The <u>Estate of Del Rosario</u> Court found that the plaintiff's complaint adequately stated a claim for relief against the municipality because it alleged that the negligent acts of the officers caused the death of the decedent. <u>Id</u>.  The court found that the estate's claims "met the plausibility threshold of <u>Ashcroft v. Iqbal</u>." <u>Id</u>. at *11.

As in <u>Estate of Del Rosario</u>, here, Plaintiff's Amended Complaint alleges conduct that includes negligent acts of the officers.  The pleading also unambiguously states that as a result of the aforementioned conduct and negligence of said defendants, Decedent sustained "severe and permanent injuries resulting in his death" and "was caused to live in great pain and suffered damages during the time of his involvement with them up until his death". <u>Id</u>. at ¶83, ¶87.  As such, Plaintiff has adequately pled viable causes of action against Defendant City concerning wrongful death and survivorship and therefore the Court should refuse, again, to dismiss these claims contained in Counts VII and VIII.

## CONCLUSION

Based upon the foregoing and for the reasons detailed herein Plaintiff respectfully requests that the Court deny Defendant City's motion to dismiss her Amended Complaint in its entirety.

Respectfully submitted:

**DiFrancesco, Bateman, Kunzman,
   Davis, Lehrer & Flaum, P.C.**

*/s Nicholas F. Pompelio*
_____
Nicholas F. Pompelio, Esq.
*Attorneys for Plaintiff, Shaquana D. Duncan, General
Administrator and Administrator Ad Prosequendum of
the Estate of Jameek Lowery, Deceased*

Dated:   June 7, 2021